IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**SHANE THOMAS MASON,**

                 Plaintiff,

v.

**NANCY A. BERRYHILL,** Acting
Commissioner of Social Security

                 Defendant.

No. 3:16-cv-02245-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

Plaintiff Shane Mason brings this action for judicial review of the Commissioner's decision denying his application for Title II Disability Insurance Benefits ("DIB"). This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

In October 2012, Mason filed his application for DIB. In June 2013, he then filed an application for Supplemental Security Income ("SSI"). Later, in February 2015, he also filed an application for child's insurance benefits ("DAC"). After a hearing, an administrative law judge ("ALJ") denied his application for DIB, determining that Mason was not disabled. The applications for SSI and DAC are not at issue before this Court. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, it is

Page 1 – OPINION AND ORDER

AFFIRMED.

**STANDARD OF REVIEW**

A reviewing court shall affirm the decision of an ALJ if their decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the district court must review the administrative record as a whole, weighing both the evidence that supports and detracts from the decision of the ALJ. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

**DISCUSSION**

The Social Security Administration ("Administration") utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, then the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's Residual Functional Capacity ("RFC"), age, education, and work experience. *Id.*

In the present case, the ALJ found that Mason was not disabled. He first determined that Mason last met the insured status requirements of the Social Security Act on June 30, 2011, making the period at issue January 1, 2010 (the alleged onset date) through June 30, 2011 (the

date last insured). Tr. 22-23.[1] At step one of the evaluation, the ALJ found that Mason engaged in substantial gainful activity from May 2010 through September 2010. Tr. 23. At step two, the ALJ determined that Mason had the following severe impairments: a bipolar disorder versus a mood disorder; alcohol dependence, in claimed remission; cannabis dependence, in claimed remission; and polysubstance abuse, in claimed remission. *Id.* At step three, the ALJ found that Mason did not have an impairment or combination of impairments that met or medically equaled the severity of listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 24.

Before moving to step four, the ALJ found that Mason had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: Mason could sustain concentration, persistence, and a pace for simple, routine, repetitive work and occasionally more complex work; he might have difficulty sustaining complex work on a consistent basis; he was limited to work which did not require work with the public on more than an occasional or infrequent basis and; he worked best in a predictable work environment. Tr. 25.

At step four, the ALJ found that Mason was unable to perform past relevant work as a greenskeeper. Tr. 32. At step five, after considering Mason's age, education, work experience, and RFC, the ALJ determined that Mason was capable of performing jobs existing in significant numbers in the national economy, including as a janitor, commercial cleaner, and industrial cleaner. Tr. 33. Having made this determination, the ALJ concluded that during the period at issue Mason was not disabled within the meaning of the Social Security Act and did not qualify for DIB. *Id.*

Mason contends that the ALJ and other components of the Administration mishandled his claims, depriving him of due process. He also contends that the ALJ erred by (1) limiting review to only evidence dated during the period at issue, with regard to his DIB claim; (2) finding his

---

[1] "Tr." refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

five-month seasonal job for the Forest Service was substantial gainful activity; (3) finding he was not credible; (4) failing to give substantial weight to the opinions of treating and examining doctors and lay witness testimony and; (5) coming up with an inadequate RFC. The Court addresses each objection in turn.

## I. Management of Plaintiff's Claims and Due Process Concerns

### i. Consolidation of claims

Mason first argues that the ALJ and the other components of the Administration deprived him of due process by mishandling his claims. Pl.'s Br. 6, Dkt. # 18. Prior to the administrative hearing, Mason's attorney asked the ALJ to consolidate his DIB and DAC applications. Tr. 254. Then, in the Administration's Notice of Hearing to Mason, the ALJ stated that the "hearing concerns your application of October 24, 2012, for a Period of Disability and Disability Insurance Benefits . . . the hearing also concerns your application of June 29, 2013, for Supplemental Security Income." Tr. 130.

However, at the hearing itself, the ALJ said that there was no SSI application pending nor was there a DAC claim before him. Tr. 43-44. In his decision, the ALJ stated that he declined to consider the SSI claim because (1) the SSI claim was escalated to the hearing level without his consent, (2) the Disability Determination Services determinations were based only on evidence through the date last insured, and (3) the Disability Determination Services psychological consultants did not consider evidence pertinent to the SSI claim. Tr. 20. The ALJ said that he declined to escalate the DAC claim to the hearing level because Disability Determination Services psychological consultants did not consider any evidence related to DAC claim. Tr. 21.

Mason argues that once the ALJ learned, after the hearing, that the SSI and DAC claims were pending, the ALJ should have consulted with Mason before remanding both claims, and denying the DIB claim. Pl.'s Br. 7, Dkt. # 18.

However, the Administration's rules do not require an ALJ to join pending claims, even where those claims share a common issue, e.g. sharing an overlapping period of time and having the same deciding issue. *See* SSI POMS DI 20101.025(C). This rule is simply permissive; an ALJ may, but is not required to, join claims that share a common issue. *See* SSI POMS DI 20101.025(C)(2). Because an ALJ is not required to join claims, Mason does not have a due process right to have his three claims heard together.

   **ii.     Due Process**

Mason argues that he was deprived of due process because he was denied a full and fair hearing. Pl.'s Br. 9, Dkt. # 18; 42 U.S.C. § 405(b)(1); *Richardson v. Perales*, 402 U.S. 389, 400-01 (1971).

Mason refers to section I-3-3-2 of the Social Security Hearings and Appeals Litigation Law Manual to show that in cases where the ALJ abuses his discretion, such as by not conducting a full and fair hearing, the Appeals Council will assume jurisdiction to review the case. Mason claims that the ALJ abused his discretion by not identifying his SSI claim as being at issue during the hearing and, subsequently, by not remanding both the SSI and DIB components of his claim for further processing. Mason also claims that the Appeals Council abused its discretion by failing to assume jurisdiction over this matter for the purpose of devising a remedy for the ALJ's errors.

The ALJ here already provided a full and fair hearing on Mason's DIB application. There is no showing that Mason has not gotten or will not get a separate hearing on his application for

SSI. The fact that his application for SSI was not adjudicated at the same hearing as his application for DIB does not qualify as an abuse of discretion or harmful legal error.

## II. The Review of Evidence Dated During the Period at Issue

### i. Medical Advisor

If an ALJ finds that a claimant is disabled, then the ALJ is mandated by SSR 83-20 to call a medical advisor to assist in inferring a reasonable onset date of disability. Mason argues that the ALJ artificially limited the scope of review for the hearing, thereby depriving him of the opportunity to have a medical advisor offer a professional opinion regarding the course of his illness and its onset date.

SSR 83-20 is not applicable in this case because a medical advisor needs to be called only after an ALJ has determined that a claimant is disabled. In this case, the ALJ determined that Mason was not disabled.

### ii. Rejected Evidence

Mason argues that because the ALJ limited his scope of review to the period at issue he improperly rejected evidence supporting a finding of disability. Pl.'s Br. 11, Dkt. # 18. The rejected evidence includes: statements from Mason's father, Tr. 30 ("it appears to describe the claimant's current functioning rather than his functioning during the period at issue…"); Dr. Huggins' opinion, Tr. 30 ("he did not evaluate the claimant until more than two years after his date last insured"); and Nurse Kamada's opinion, Tr. 31 ("[Nurse Kamada] did not begin treating the client until after the date last insured, and he acknowledged that his treatment was minimal in late 2011, and he did not treat the claimant at all in 2012.")

Plaintiff has the burden to establish disability prior to the date last insured. 42 U.S.C. § 416(i); 20 C.F.R. § 404.1505, 20 C.F.R. § 416.905. The rejected evidence refers to Mason's

condition after the date last insured, June 30, 2011. The ALJ's opinion rightfully focused on the period at issue, namely Mason's onset date of alleged disability through the date last insured, while still taking into consideration medical evidence from 2007 up to the month of Mason's administrative hearing in February 2015. Tr. 26-31.

### III. Plaintiff's Five Month Seasonal Job for the Forest Service

Mason was charged with felony burglary and entered a diversion program under which the charges against him would be dropped in exchange for full compliance with the terms of the program. Terms included employment, mental health, drug, and alcohol treatment, and routine urinalysis (UAs). Pl.'s Br. 12, Dkt. # 18. In accordance with the diversion program, Mason got a seasonal job with the Forest Service as a sign erector from May to September 2010, from which he earned $13,721.17. Tr. 166.

Mason argues that his job was highly supported and performed with special conditions, while also being closely monitored for mental and substance related problems. During his time with the Forest Service, he was required to attend counseling three or more times a week. Tr. 50. He also had to check in with the court every two weeks. *Id.* Even so, he argues that he had difficulty with irritability and distractibility, and his performance was marked by difficulty concentrating, anxiety, and impatience. He was allowed to work irregular hours to permit him to attend treatment court. Without that level of support, he argues, it is unlikely that he would have been able to sustain the work. Mason testified that maintaining enough to not get fired was one of the hardest things he had to do. Tr. 46-48. He was not asked by the Forest Service to return the following summer. Tr. 55, 348.

Seasonal earnings can be substantial gainful activity if the earnings, averaged over the entire year, exceed the presumptive dollar amount. SSR 83-35. Averaging Mason's earnings over

the twelve months of 2010 reveals he earned in excess of $1,140 per month which is above the presumptive dollar amount for substantial gainful activity.

Mason argues that the ALJ only took into consideration the monetary remuneration in concluding that his seasonal work was SGA. Tr. 23. Mason argues that the ALJ failed to make any findings regarding whether the job was an unsuccessful work attempt. Tr. 44-45.

Assuming that the ALJ erred in finding the seasonal work was substantial gainful activity, any error would have been harmless, because the ALJ still continued to step five of the sequential analysis and determined that Mason was not disabled.

### IV. Mason's Credibility

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, to discredit a plaintiff's testimony when a medical impairment has been established, the ALJ must provide "specific, cogent reasons for the disbelief." SSR 96-7p; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citation omitted).

Mason argues that the ALJ erred by focusing on his substance abuse, and by failing to more closely consider the underlying causes of his symptoms: illness and a history of mental problems going back to his childhood. Additionally, he argues that not all of his manic episodes are associated with substance abuse. For example, he had a documented manic episode in 2007 without any substance abuse. Tr. 467-69. He was also seen in the ER in September 2011 for hypomanic symptoms and his UA was negative. Tr. 195, 336-37. Mason also argues that the ALJ ignored that his Bipolar I not only causes manic episodes, but that it also causes long periods of profound depression, social anxiety, and agoraphobia. Pl.'s Br. 15, Dkt. # 18.

Impairments that can be controlled effectively with treatment are not disabling. *See Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Evidence shows that Plaintiff's mental symptoms improved when he adhered to treatment; in January 2010 and in February 2011, he told his provider that he was doing well on his medication, with no side effects and that his mood was stable. Tr. 670, 803. The ALJ reasonably concluded that if Plaintiff complied with treatment, he was capable of sustaining work at simple repetitive tasks and limited social contact. Tr. 25.

Additionally, inconsistency with objective medical evidence is a clear and convincing reason to reject a claimant's testimony where it is not the "sole" reason. 20 C.F.R. § 404.1529; *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). During the relevant period, counseling records revealed that Plaintiff's presentation was consistent with only mild symptoms or functional limitations. Tr. 548, 681, 683, 685, 687, 690, 799. The objective evidence does not support the extent of Plaintiff's symptom testimony.

Lastly, a claimant working in substantially gainful activity contemporaneously to claiming disability is a clear and convincing reason for an ALJ to discount his testimony. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). The ALJ reasonably concluded Plaintiff's ability to sustain full time work for the Forest Service during a period of alleged disability undermined his statements that he was mentally unable to work. Tr. 176.

The ALJ properly decided that Mason was not entirely credible as a witness due to his ability to work in substantial gainful activity for the Forest Service, inconsistency with the objective medical evidence, and the effective control of his impairments.

V. **Treating And Examining Doctor Opinions and Lay Witness Testimony**

The medical opinion of Mason's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2). When rejecting a treating doctor's medical opinion, an ALJ should set "out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). When a treating physician's opinion is not controlling, it is weighed according to factors such as length of treatment relationship, frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. 20 CFR § 404.1527(c)(2)-(6).

**i. Nurse Kamada**

Mason argues that Nurse Kamada's opinion was based upon a strong longitudinal history, medical record review, referral by Dr. Huggins, consistency with the records, great familiarity with his symptoms, and the recommendation of medications that have resulted in his greater stability. Tr. 886-90.

The ALJ gave some weight to Nurse Kamada's opinion because of his treating relationship and review of some of Plaintiff's past medical records. Tr. 31. However, the ALJ discounted the opinion to the extent that Nurse Kamada did not begin treating Plaintiff until after the date he was last insured, and the treatment during the period at issue was minimal. Tr. 31. Mason applies what is commonly referred to as the "treating source rule" to argue that this opinion should be given controlling weight, but he misapplies the regulations. Under the regulations, only acceptable medical sources are entitled to deference if they had a treating relationship with a claimant. 20 C.F.R. § 404.1513, 404.1527. As a nurse practitioner, Nurse

Kamada's opinion was not entitled to the same deference as that of an acceptable medical source. 20 C.F.R. § 404.1514(d)(1). In rejecting testimony from other sources, the ALJ only has to give "arguably germane reasons," and need "not clearly link his determination to those reasons." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2011); *see also Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

### ii. Dr. Huggins

Mason argues that as an acceptable source, Dr. Huggins' opinion, based upon comprehensive psychological testing ordered by Nurse Kamada, establishes that Mason has impaired interpersonal skills and memory deficits that would negatively impact his ability to work. Tr. 381-82, 393. The ALJ credited Dr. Huggins' opinion that Mason has some limitation in social and cognitive functioning and included such corresponding restrictions in formulating the RFC assessment. Tr. 25. However, the ALJ noted that Dr. Huggins did not provide any specific work-related functional limitations and he submitted his opinion more than two years after Plaintiff's disability insurance expired. Tr. 28-30. The ALJ set out specific and detailed reasons, supported by substantial evidence, for discounting the testimony of Dr. Huggins.

### iii. Lay witnesses statements

Mason also argues in his opening brief that there are multiple lay witnesses' statements that should not have been rejected by the ALJ. It is unclear which witnesses' statements Mason is arguing should not have been rejected. Because Mason did not challenge this issue with specificity, he has waived any challenge on those grounds. *See Indep. Towers of Wash v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) (holding that issues not raised with specificity in the opening brief are deemed waived).

### VI. ALJ's RFC Assessment

Because the limitations set out in the RFC adequately reflect the broad impact of Mason's mental impairments on his abilities to function, the RFC assessment is supported by substantial evidence in the record and is free of harmful legal error.

## CONCLUSION

For the foregoing reasons, the ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 23rd day of March, 2018.

       /s/ Michael J. McShane
Michael J. McShane
United States District Judge